# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CARLA SUE HATFIELD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-13-400-JHP-SPS |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

The claimant Carla Sue Hatfield requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts the Administrative Law Judge (ALJ) erred in determining she was not disabled. For the reasons set forth below, the decision of the Commissioner should be REVERSED and the case REMANDED to the ALJ for further proceedings.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of

substantial gainful work which exists in the national economy[.]" *Id.* § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

### Claimant's Background

The claimant was born July 1, 1967, and was forty-five years old at the time of the administrative hearing (Tr. 32). She earned her GED and completed Management classes through McDonald's, and has worked as a fast food manager and video store manager (Tr. 21, 124). The claimant alleges that she has been unable to work since February 21, 2010, due to fibromyalgia, irritable bowel syndrome (IBS), spastic colon, chronic depression, chronic fatigue syndrome, congestive heart failure, insomnia, and overactive bladder (Tr. 123).

### Procedural History

On July 21, 2010, the claimant applied for benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. Her application was denied. ALJ Clifford Shilling conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated June 1, 2012 (Tr. 12-22). The Appeals Council denied review, so the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 404.981.

### Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity (RFC) to perform a limited range of light work, *i. e.*, she could lift/carry twenty pounds occasionally and ten pounds frequently, and sit/stand/walk six hours in an eight-hour workday, but that she was

limited to simple, routine, repetitive tasks, with only occasional interaction with the public and co-workers, occasional changes in work setting, and occasional judgment required on the job (Tr. 16). The ALJ then concluded that although the claimant could not return to her past relevant work, she was nevertheless not disabled because there was other work she could perform work in the regional and national economies, *i. e.*, housekeeper, assembly worker, and machine tender (Tr. 22).

**Review**

The claimant contends that the ALJ erred: (i) by failing to properly evaluate the consultative opinion of Terry L. Efird, Ph.D., and (ii) by failing to properly evaluate her credibility. Because the ALJ failed to properly analyze *both* consultative opinions in the record, the decision of the Commissioner should be reversed.

The ALJ found that the claimant's severe impairments were depression and chronic fatigue, but that her fibromyalgia, IBS, and "a number of other medical conditions and complaints" were non-severe (Tr. 14). The medical evidence reveals that the clamant was largely treated by Dr. Mark Bonner at FirstCare South from 2009 through 2012. His treatment notes reflect that he saw her for depression, anxiety, fibromyalgia, spastic colon, and IBS (Tr. 205-222, 258-265, 279-297). His notes reflect that she reported continued problems with anxiety, and reported difficulty leaving her home (Tr. 260). On March 9, 2012, he completed a physical RFC Questionnaire, noting the claimant's physical and mental impairments, indicating that her physical condition was exacerbated by the psychological conditions of depression, anxiety, and stress (Tr. 301-302). He stated that the claimant's pain and symptoms would interfere "constantly,"

*i. e.*, up to 85% of the time; interfere with her attention and concentration during the work day; and that she was incapable of even low stress jobs because stress increases the severity of her symptoms (Tr. 302). As for her ability to perform work activities, he indicated that she could stand/walk less than two hours in an eight-hour workday, and that she could sit at least six hours but only with frequent breaks (Tr. 303). He further indicated she would need to walk around every fifteen minutes for two to three minutes, and that she would need to be able to sit, stand, and walk at will, and also take unscheduled breaks (Tr. 303). He stated that she could lift less than ten pounds rarely; rarely twist, stoop, or climb stairs; and never crouch/squat or climb ladders (Tr. 304). He indicated that her impairments would cause good days and bad days, and that she would likely be absent from work more than four days in a month (Tr. 305).

On February 2, 2011, Gene Chambers, Ph.D., examined the claimant and assessed her with major depression, recurrent, and panic disorder with agoraphobia, as well as a global assessment of functioning (GAF) score of 55-65 (Tr. 233). He noted that the claimant had limitations in her capacity to communicate and interact in a socially adequate manner, capacity to cope with typical mental/cognitive demands, capacity to attend and sustain concentration on basic tasks, capacity to sustain persistence and completing tasks, and capacity to complete work-like tasks (Tr. 233). Dr. Terry Efird conducted a second consultative examination on May 13, 2011. His differential diagnosis was that the claimant had major depressive disorder moderate to severe, generalized anxiety disorder, personality disorder NOS, and a GAF of 40-50 (Tr. 274). He noted that the claimant was fairly agitated/antsy and remarkably anxious, that there

were indications of cognitive inefficiency but that she appeared able to track and respond adequately for the purposes of this evaluation, but that based on the presentation, it appeared reasonably probable that she would have remarkable difficulty persisting over longer time frames and/or in unstructured settings (Tr. 275).

A state reviewing physician determined that the claimant had moderate limitations with regard to difficulties in maintaining social functioning and difficulties in maintaining concentration, persistence, or pace, and mild restriction of activities of daily living (Tr. 253). In a more detailed mental RFC assessment, she found that the claimant was moderately limited in the ability to carry out detailed instructions, the ability to maintain attention and concentration for extended periods, the ability to sustain an ordinary routine without special supervision, the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, the ability to accept instructions and respond appropriately to criticism from supervisors, the ability to respond appropriately to changes in the work setting, and the ability to set realistic goals or make plans independently of others (Tr. 241).

In his written opinion, the ALJ summarized the claimant's testimony and her medical records. In discussing the opinion evidence, the ALJ summarized both Dr. Chambers and Dr. Efird's opinions, then stated that they were consistent with his RFC limitation to unskilled work. He further found that the claimant was limited physically more than the state physicians believed, but only gave Dr. Bonner's opinion "some weight" and only "in so far [sic] as it is consistent with the above residual functional

capacity" (Tr. 20). He further discounted the claimant's credibility and that of her husband, who completed a Third Party Function Report, and found her not disabled (Tr. 20-21).

"An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional. . . . An ALJ must also consider a series of specific factors in determining what weight to give any medical opinion." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) [internal citation omitted] [emphasis added], *citing Goatcher v. United States Department of Health & Human Services*, 52 F.3d 288, 290 (10th Cir. 1995). The pertinent factors are: (i) the length of treatment relationship and frequency of examination; (ii) nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins v. Barnhart*, 350 F.3d 1297, 1300-01 (10th Cir. 2003), *citing Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001). The ALJ recited the opinions of Dr. Chambers and Dr. Efird favorably but did not provide any real analysis regarding them and further failed to disclose what weight he afforded their opinions. Nevertheless, he rejected (by failing to discuss) some of the limitations applicable to the claimant, *e. g.*, limitations in her ability to persist over longer time frames than Dr. Efird's exam, her ability to persist in an unstructured setting,

and her ability to cope with the typical mental demands of basic work-like tasks, but he did not provide any explanation for such rejection. *See, e. g., Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) ("An ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability."), *citing Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004) *and Hamlin*, 365 F.3d at 1219 (10th Cir. 2004). *See also Briggs ex rel. Briggs v. Massanari,* 248 F.3d 1235, 1239 (10th Cir. 2001) ("Although the ALJ need not discuss all of the evidence in the record, he may not ignore evidence that does not support his decision, especially when that evidence is 'significantly probative.'"). This was a significant omission in this case because these opinions go to the heart of the claimant's ability to obtain and keep a job. In any event, it was clearly error for the ALJ to reject without explanation parts of the opinions while finding other parts consistent with the RFC. *See Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."), *citing Switzer v. Heckler*, 742 F.2d 382, 385-86 (7th Cir. 1984) ("Th[e] report is uncontradicted and the Secretary's attempt to use only the portions favorable to her position, while ignoring other parts, is improper.") [citations omitted].

Because the ALJ failed to properly evaluate the opinions of Dr. Chambers and Dr. Efird, the decision of the Commissioner should be reversed and the case remanded for further analysis by the ALJ. If this results in adjustments to the claimant's RFC, the ALJ

should then re-determine what work, if any, the claimant can perform and ultimately whether she is disabled.

## Conclusion

The undersigned Magistrate Judge hereby PROPOSES a finding by the Court that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The undersigned Magistrate Judge thus RECOMMENDS that the Court reverse the decision of the Commissioner and remand the case for further proceedings. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 6th day of March, 2015.

_____
**STEVEN P. SHREDER
UNITED STATES MAGISTRATE JUDGE**